IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TASTE OF PERFECTION, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:24-cv-00907 |
| | ) Judge Aleta A. Trauger |
| DEMARCUS WALKER, | ) |
| Defendant. | ) |

**MEMORANDUM**

This case concerns a contract dispute between Taste of Perfection, LLC ("TOP"), the plaintiff, and its former client, DeMarcus Walker, the defendant.[1] Mr. Walker has filed a Motion to Dismiss (Doc. No. 7) to which TOP has filed a Response (Doc. No. 9), and Mr. Walker has filed a Reply (Doc. No. 12.) The motion will be denied.

**I. FACTS**

TOP is a Tennessee limited liability company whose principal place of business is Davidson County, Tennessee and whose owner, operator, and sole member is Karimah White,[2] a Tennessee citizen. (Compl. ¶¶ 1–2; Doc. No. 1 ¶ 9; Doc. No. 11-1, at 1.) TOP provides private chefs and food preparation. (Compl. ¶¶ 4, 8.) The defendant, Mr. Walker, is an Illinois citizen and professional football player for the Chicago Bears. (*Id.* ¶¶ 3, 8.) Before Mr. Walker transferred to the Bears in Spring 2023, he played for the Tennessee Titans and lived in Tennessee. (*Id.* ¶¶ 7, 8,

---

[1] The Complaint ("Compl.") is located at Doc. No. 1-1, at 3–11.

[2] Both the Complaint and Response occasionally refer to Ms. White as the plaintiff. (*See, e.g.*, Compl. ¶ 14 ("Plaintiff moved to Illinois with her family."); Doc. No. 10, at 6 ("plaintiff's minor child") (quoting Compl. ¶ 9).) The court will treat TOP as the sole plaintiff.

1

14; Doc. No. 7-2 ¶ 3.) In September 2022, Mr. Walker contracted with TOP to provide food preparation services while he was living in Tennessee. (Compl. ¶ 7.) After Mr. Walker learned that he would move to Illinois, the parties discussed continuing TOP's services for Mr. Walker there, and, on June 6, 2023, they executed a Memorandum of Understanding ("MOU")[3] to that effect. (*Id.* ¶¶ 8–9; Doc. No. 7-1, at 2.) It is disputed whether the parties thereafter signed a contract for TOP's services in Illinois. But it is undisputed that, after Mr. Walker moved to Illinois, Ms. White and her minor child moved to Illinois on or about July 30, 2023, to prepare Mr. Walker's meals. (Compl. ¶¶ 9, 14.) Ms. White cooked for Mr. Walker for roughly nine months, apparently without incident. (*Id.* ¶ 14.)

TOP alleges that, starting in May 2024, Mr. Walker became disrespectful and tried to prevent Ms. White from performing services in accordance with the parties' agreement. (*Id.* ¶¶ 16–18.) For example, the defendant allegedly refused Ms. White entrance to his house to prepare food and, on short notice, directed her to make food deliveries elsewhere. (*Id.* ¶ 19.) At some point, according to the Complaint, "both parties engaged counsel to discuss the contract," but the defendant never sent a "scope of work," as the parties had discussed, and instead Mr. Walker decided to end food service after June 6, 2024. (*Id.* ¶ 21.) Even though the defendant had indicated that he no longer desired TOP's services, the defendant's Illinois counsel requested food delivery to the Bears stadium on June 17, 2024. However, Mr. Walker was not there to receive it, and Bears security would not permit Ms. White to enter. (*Id.* ¶ 23.) At some point—the Complaint does not state when—the "defendant caused a false criminal complaint or report to be filed . . . claiming theft or robbery and listing White as a potential suspect, all in an effort to avoid [his] contractual obligations." (*Id.* ¶ 30.)

---

[3] The MOU is located at Doc. No. 1-1, at 22–24.

After Mr. Walker missed a payment, the plaintiff sent two Notices of Breach—on June 12, 2024, and June 17, 2024. (*Id.* ¶¶ 24–25.) The plaintiff alleges that defense counsel advised her that Mr. Walker would not send any more payments. (*Id.* ¶ 27.) TOP advised Mr. Walker that it would suspend services to mitigate damages. (*Id.* ¶ 25.)

The dispute most pertinent to the pending motion relates to the document purportedly governing TOP's services for Mr. Walker in Illinois—the Engagement Document.[4] The plaintiff alleges that the parties signed this document on June 26, 2023 and that Mr. Walker breached their agreement, after roughly nine months of service, without paying the agreed-upon termination fees. (*Id.* ¶ 20; Doc. No. 10, at 3.) In a declaration filed with his Motion to Dismiss, Mr. Walker states that he never read, signed, or authorized anyone to sign the Engagement Document (Doc. No. 7-2 ¶¶ 8–10), and he argues, therefore, that "[a] new written agreement was never entered." (Doc. No. 7-1, at 2.)

Relevant to the pending motion, the Engagement Document contains a choice of law and venue clause: "All questions concerning . . . this Agreement shall be governed by the laws of the state of Tennessee without regard to conflict of laws and venue shall only lie with the state or federal courts in Davidson County, Tennessee." (Engagement Document ¶ 16.)

## II. PROCEDURAL HISTORY

On July 8, 2024, the plaintiff filed suit in Davidson County Chancery Court. Attached to the state court Complaint are the MOU and disputed Engagement Document. The plaintiff alleges breach of contract (Compl. ¶¶ 39–43), promissory estoppel (*id.* ¶¶ 44–51), and unjust enrichment (*id.* ¶¶ 39–43) and requests a declaratory judgment and damages. (*Id.* ¶¶ 32–38.) On July 25, 2024,

---

[4] The at-issue Private Chef Services Engagement Agreement is located at Doc. No. 1-1, at 13–20. Because a central question in this case is whether the document constitutes an agreement, the court will refer to this document as the "Engagement Document."

3

the defendant timely removed the action to this court and invoked this court's diversity jurisdiction. (Doc. No. 1, at 1; *id.* ¶¶ 6–13.) On July 31, 2024, the defendant filed an Amended Motion to Dismiss (Doc. No. 7), accompanying Memorandum (Doc. No. 7-1), and a Declaration (Doc. No. 7-2). The defendant seeks dismissal for lack of personal jurisdiction, improper venue, *forum non conveniens*, and failure to state a claim. (Doc. No. 7, at 1.) In the alternative, the defendant requests that the case be transferred to "Illinois federal court."[5] (*Id.*) The plaintiff filed a Response (Doc. No. 9), accompanying Memorandum (Doc. No. 10), a Declaration (Doc. No. 10-1), two exhibits (Docs. Nos. 10-2, 10-3), and a Business Entity Disclosure, with an exhibit (Docs. Nos. 11, 11-1). The defendant filed a Reply. (Doc. No. 12.)

### III. LEGAL STANDARDS

#### A. Motion to Dismiss for Lack of Personal Jurisdiction – Rule 12(b)(2)

"For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). In diversity actions, federal courts start with state law to determine whether they have personal jurisdiction over a defendant. *Johnson v. Griffin*, 85 F.4th 429 (6th Cir. 2023) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Because this case was removed to the United States District Court for the Middle District of Tennessee, Tennessee law applies. Tennessee's long-arm statute provides for personal jurisdiction over nonresidents on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code. Ann. § 20–2–214(a)(6). This statute "has been interpreted to be 'coterminous with the limits on

---

[5] While the defendant's motion requests, if the court does not grant his Motion to Dismiss, that the court transfer the case to "Illinois federal court" (Doc. No. 7, at 1; Doc. No. 7-1, at 1, 14–15), in his Reply, the defendant writes that "[t]he case could be transferred to state court at Circuit Court for Cook County, Tennessee [sic] . . . or to federal court at Northern District Court of Illinois." (Doc. No. 12, at 4–5.)

4

personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Smith v. Home Depot USA, Inc.*, 294 F. App'x 186, 189 (6th Cir. 2008) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th Cir. 2005)); *see also Harmer v. Colom*, 650 F. App'x 267, 272 (6th Cir. 2016) ("Tennessee's long-arm statute goes to the due process clause's limit.") (citing *Gordon v. Greenview Hosp. Inc.*, 300 S.W. 3d 635, 645 (Tenn. 2009)). Thus, TOP need only show that personal jurisdiction over Mr. Walker comports with federal due process. Due process requires that a defendant have "minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, (1980), and that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The party asserting personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449–50 (6th Cir. 2012) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). The "weight of the burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion based on affidavits and materials the parties

submit, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Neither party has requested discovery or an evidentiary hearing, so the court will "rule[] on written submissions alone." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499 (6th Cir. 2020) (quoting *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012)). In this situation, the plaintiff need only make out a *prima facie* case of personal jurisdiction. *Id.* A plaintiff's burden, in this case, "is relatively slight[.]" *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021).

To determine whether the plaintiff has made this *prima facie* showing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Dean*, 134 F.3d at 1272 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). In so doing, the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Dorm v. Dominique*, No. 22-5620, 2023 WL 2543714, at *4 (6th Cir. Mar. 14, 2023) ("The court must . . . ignore the defendant's controverting assertions.") (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)); *Carter v. Univ. of Texas at Dallas*, No. 20-1714, 2021 WL 243811, at *2 (6th Cir. Jan. 20, 2021) ("In these circumstances, we do not consider the controverting assertions of the defendants.") (citing *Dean*, 134 F.3d at 1271). But the court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997).

B. <u>Motion to Dismiss for Improper Venue – Rule 12(b)(3)</u>

Rule 12(b)(3) provides only the "procedural vehicle" for a plaintiff to move to dismiss the complaint for improper venue. *Kerobo v. Sw. Clean Fuels*, 285 F.3d 531, 538 (6th Cir. 2002).

6

Meanwhile, the requirements for venue and the remedies available for improper venue are set by statute. *Id*. "Venue in removed cases is governed solely by § 1441(a)," the federal removal statute. *Id.* at 534 (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953)). Under 28 U.S.C. § 1441(a), venue is set in the district embracing the state court in which the case was filed.

 C. <u>Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)</u>

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

## IV. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction – Rule 12(b)(2)

#### 1. The Engagement Document's Signatures

The plaintiff argues that the parties had an agreement for services via a document signed by both parties or their representatives. (Doc. No. 10, at 4.) In support of this contention, the plaintiff has filed a copy of the document, which includes an electronic signature bearing the defendant's name. (Engagement Document, at 20.) The email address accompanying the signature is identical to the email address accompanying what the defendant states is his signature on the MOU. (MOU, at 24; Doc. No. 7-1, at 2; Doc. No. 7-2 ¶ 6.) In further support, the plaintiff contacted the software company it used to execute the agreement—Honeybook. (Doc. No. 10-1 ¶ 15.) According to the plaintiff, Honeybook's records indicate that the document was electronically signed by someone in Nashville, Tennessee using the defendant's email address. (*Id.* ¶ 16.)

Without an evidentiary hearing, the court must view the evidence in favor of the nonmoving party—here, the plaintiff. Here, the evidence viewed in the light most favorable to the plaintiff establishes that Mr. Walker signed the Engagement Document. As the court discussed above, for purposes of the motion to dismiss for lack of personal jurisdiction, the court may not consider Mr. Walker's contrary contention that neither he nor his representative signed this document. (Doc. No. 7-1, at 17; Doc. No. 7-2 ¶ 10.)

#### 2. The Engagement Document's Forum Selection Clause

Through a forum selection clause, parties may "agree in advance to submit to the jurisdiction of a particular court." *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). That rule arises from the premise that the right not to be subject to a particular court's jurisdiction is a "waivable right" and that a party may, therefore, "consent to the personal

8

jurisdiction of a particular court system." *Id.* at 721 (citation omitted). "The presence of a valid and enforceable forum selection clause obviates the need to conduct a due-process and minimum-contacts analysis because that clause acts as consent to jurisdiction in the contracted-for forum." *Porter Casino Resort, Inc. v. Ga. Gaming Inv., LLC*, No. 18-CV-2231-SHM-DKV, 2018 WL 4558999, at *6 (W.D. Tenn. Sept. 21, 2018) (citing *Preferred Cap.*, 453 F.3d at 721).

Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991) (quoting *Bremen*, 407 U.S. at 10). The party challenging the forum selection clause has a "particularly heavy burden of proof because forum selection clauses are presumptively enforceable." *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 637 (E.D. Tenn. 2010) (quoting *Long v. Dart Int'l, Inc.*, 173 F. Supp. 2d 774, 777 (W.D. Tenn. 2001)).

Usually, "federal law governs the enforceability of a forum-selection clause in a diversity suit." *Firexo, Inc. v. Firexo Grp.*, 99 F.4th 304, 309 (6th Cir. 2024) (citing *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2009)). But "[w]hen a federal court sitting in diversity exercises personal jurisdiction over a party pursuant to a forum-selection clause, *state law* controls the question of whether that clause is enforceable." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017) (emphasis added). Because the court will review the forum selection clause to determine whether it can provide a basis for personal jurisdiction, it will apply state law.

"In Tennessee, a forum selection clause is generally enforceable and binding upon the parties, and will be upheld if it is fair and reasonable in light of the circumstances surrounding its origin and application." *Medina-Tratel v. Holloway*, No. M2022-01640-COA-R3-CV, 2024 WL 1479976, at *3 (Tenn. Ct. App. Apr. 5, 2024) (citations omitted). A Tennessee court must enforce

a forum selection clause unless: (1) the plaintiff cannot secure effective relief in the selected forum state; (2) the selected state would be substantially less convenient for trial; (3) the agreement as to the selected forum was obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means; (4) it would be unfair or unreasonable to enforce the clause for some other reason (the "*Dyersburg* factors"). *Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983); *accord Kopecky v. Holiday Inn Club Vacations, Inc.*, No. E2022-01137-COA-R3-CV, 2023 WL 4583622, at *6 (Tenn. Ct. App. July 18, 2023) (applying the *Dyersburg* factors).

In this case, the first *Dyersburg* factor does not apply because the plaintiff is not challenging the forum selection clause.

As for the second factor, the defendant argues that this court is a less convenient forum because Mr. Walker and Ms. White both live in Illinois, and "all the alleged acts occurred in Illinois."[6] (Doc. No. 7-1, at 14.) Moreover, "all the witnesses" are in Illinois. (Doc. No. 7, at 2.) Thus, the defendant argues, "[i]t would be a burden on [Mr. Walker] to have to come to Tennessee to defend this lawsuit." (*Id.* at 10.) However, Tennessee courts interpret "substantially less convenient" to mean that "forcing the party to proceed in the selected forum would seriously impede its ability to fully and fairly pursue or defend the action." *Sevier Cnty. Bank v. Paymentech Merch. Servs.*, No. E2005-02420-COA-R3-CV, 2006 WL 2423547, at *5 (Tenn. Ct. App. Aug. 23, 2006) (quoting *Safeco Ins. Co. of America v. Shaver*, No. 01A01-9301-CH-00005, 1994 WL 481402 (Tenn. Ct. App. Sept. 7, 1994)). Notably, "the party resisting a forum selection clause must show *more than inconvenience or annoyance such as increased litigation expenses*, and the party cannot rely on facts and circumstances that were present or reasonably foreseen when they signed

---

[6] In his Reply, Mr. Walker states that Ms. White lives in Tennessee. (Doc. No. 12, at 5.)

the contract." *Kopecky*, 2023 WL 4583622, at *6–7 (quoting *ESI Cos. v. Ray Bell Constr. Co.*, No. W2007-00220-COA-R3-CV, 2008 WL 544563, at *7 (Tenn. Ct. App. Feb. 29, 2008) (emphasis added by *Kopecky*). The burden of traveling from Chicago to Nashville,[7] on which the defendant relies, is insufficient reason to meet Tennessee's high bar for "substantial inconvenience." And Mr. Walker knew that he was moving to Illinois when he or his representative allegedly signed the contract with a company headquartered in Tennessee.

The third factor is difficult to apply because the defendant maintains that he did not sign the Engagement Document and therefore never agreed to the forum selection clause. But viewing the evidence presented in the plaintiff's pleadings and affidavits in its favor, the plaintiff has made a *prima facie* showing that the defendant or his representative signed the document. The defendant has made no allegation that, if he *had* signed the Engagement Document, his consent to the forum would have been obtained by misrepresentation, duress, abuse of economic power, or other unconscionable means.

As to the fourth factor, Mr. Walker has not presented any further reason why enforcing the Engagement Document's forum selection clause, if he had signed the Agreement, would be unfair or unreasonable.

Weighing the relevant factors, this court finds that, under Tennessee law, the Engagement Document's forum selection clause is enforceable and that Mr. Walker has therefore consented to this court's jurisdiction over him in this action. The court will therefore deny the motion to dismiss for lack of jurisdiction without conducting the minimum contacts analysis.

B. Motion to Dismiss for Improper Venue – Rule 12(b)(3)

---

[7] The court takes judicial notice of the fact that there are numerous direct, nonstop flights between Nashville and Chicago each day.

11

The defendant's argument, which cites 28 U.S.C. § 1391 (*see* Doc. No. 7-1, at 4–5, 11–12)—the federal venue statute—is inapposite. "[O]n the question of venue, § 1391 has no application to this case because this is a removed action." *Polizzi*, 345 U.S. at 665. As discussed above, venue in removed actions is governed by 28 U.S.C. § 1441(a). *See infra* p. 7. The U.S. District Court for the Middle District of Tennessee is the proper venue for an action removed from Davidson County, Tennessee Chancery Court. Therefore, the motion to dismiss for improper venue under Rule 12(b)(3) will be denied.

C. <u>Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)</u>

The defendant moves to dismiss the plaintiff's claims under Rule 12(b)(6) for failure to state a claim. (Doc. No. 7, at 1; Doc. No. 7-1, at 1, 15–20.) For the reasons described herein, the court will deny the motion.

   1. *Count I – Declaratory Judgment*

The defendant moves to dismiss the plaintiff's claim for a declaratory judgment under Tennessee law. (Doc. No. 7-1, at 15.) Defendant's sole contention is that, "[s]ince this court does not have personal jurisdiction over Mr. Walker[,] the Declaratory judgment action cannot stand and should be dismissed." (*Id.*) The court has explained why it will deny Mr. Walker's motion to dismiss for lack of personal jurisdiction. *See* discussion *infra* pp. 8–11. Mr. Walker does not present an alternative argument for dismissing Count I of the Complaint, so the court will deny the motion.

   2. *Counts II &III – Breach of Contract & Promissory Estoppel*

The defendant moves to dismiss the plaintiff's claims for breach of contract and promissory estoppel. (Doc. No. 7-1, at 16–18.)

In brief, the plaintiff alleges that the parties had an agreement for food preparation services in Illinois. Under that agreement, Ms. White moved, with her minor child, from Tennessee to Illinois and cooked for Mr. Walker for nine months without incident. The plaintiff alleges that, first, Mr. Walker made it difficult for Ms. White to perform under the contract. Then he terminated their agreement, did not pay for services, and has said that he will not make any payments—including, presumably, the Engagement Document's termination fees.

The defendant's argument for dismissing the breach of contract and promissory estoppel claims relies on Tennessee's statute of frauds, Tenn. Code Ann. § 29-2-101(a)(5), according to which contracts that cannot be performed in one year must be signed to be enforceable. (Doc. No. 7-1, at 16–18.) The Engagement Document set out a term of three years. (Engagement Document, at 14 ("The term of this Agreement . . . shall be thirty-six (36) consecutive months").)

The defendant argues that he did not sign the Engagement Document (Doc. No. 7-1, at 17), that he has never authorized anyone to sign any contract (Doc. No. 7-2 ¶ 10), and moreover "there is no allegation that Mr. Walker signed the contract or that anyone authorized to sign the contract on his behalf signed the contract." (Doc. No. 7-1, at 17.) Therefore, the defendant argues, under the statute of frauds, this court cannot enforce the Engagement Document.

Mr. Walker is strictly correct that the plaintiff's Complaint does not use the phrase "Mr. Walker signed the Engagement Agreement." But TOP does allege the following:

- "Through White, TOP provided executive level private chef services to Walker in Illinois pursuant to a Private Chef Services Engagement Agreement ("Engagement Agreement"), a copy of which is attached hereto as Exhibit 1." (Compl. ¶ 4.)

- "Both parties engaged counsel to discuss the contract and defendant's Illinois counsel indicated she would prepare a proposed 'scope of work' as an addendum to the contract[.]" (*Id.* ¶ 21.)

The attached Engagement Document shows, as the plaintiff argues,[8] Mr. Walker's electronic signature and his email address. Taken together with the Complaint's multiple references to the parties' "contract," the court finds that the Complaint adequately alleges that the parties had a signed contract for purposes of stating a claim for breach of contract and promissory estoppel.

The court is not persuaded by Mr. Walker's argument that his alleged *typed* signature on the Engagement Document is not the same as his *signed* signature on the MOU. (Doc. No. 7-1, at 17.) As the plaintiff points out, this argument "fail[s] to account for the difference between a typed and signed signature . . . [and] the fact that the signatures are attached to the exact same email address, which is known to be that of the Defendant." (Doc. No. 10, at 8.)

The defendant makes no arguments apart from those under the statute of frauds, including in his Reply. Because the court finds that the plaintiff has plausibly alleged that the parties signed the Engagement Document, it does not address whether the plaintiff's claims for breach of contract and promissory estoppel would succeed, even if the parties had not both signed the Engagement Document. Thus, the defendant's motion to dismiss Counts II and III will be denied.

    3.    *Count IV – Unjust Enrichment*

TOP pleads in the alternative that the defendant received catering services, did not pay for them, and has been unjustly enriched thereby. (Compl. ¶¶ 26, 53–55.)

Mr. Walker seeks dismissal of this count based on two arguments. First, he argues that "TOP has failed to allege any benefit that Mr. Walker retained to TOP's detriment." (Doc. No. 7-1, at 19.) The Complaint clearly alleges that TOP failed to pay for services provided. (*See* Compl. ¶¶ 26, 53–55.)

---

[8] *See* discussion *infra* p. 8.

Second, Mr. Walker argues that, while the parties did not both sign the Engagement Document, they both signed the MOU. (Doc. No. 7-1, at 19.) And because the doctrine of unjust enrichment applies only where there is no contract, the doctrine is inapplicable here because "a contract exists[.]" (*Id.* at 19–20.) But the MOU does not govern the services TOP provided in Illinois—according to Mr. Walker, without any agreement. The mere fact that the parties have *a* contract does not doom the plaintiff's claim, in the alternative, for unjust enrichment. Thus, the defendant's motion to dismiss Count IV will be denied.

D.  Motion to Dismiss for *Forum Non Conveniens*

In addition to dismissal under Rules 12(b)(2), (b)(3), and (b)(6), Mr. Walker argues that this Complaint should be dismissed for *forum non conveniens*. (Doc. No. 7, at 1; Doc. No. 7-1, at 1, 12–14.)

The doctrine of *forum non conveniens* grants a district court the discretion to dismiss a case, even when venue is proper, "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). "Under the common law doctrine of *forum non conveniens*, a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619 (6th Cir. 2018) (citations and internal quotation marks omitted).

Nothing in the federal removal statute restricts this court's authority to dismiss a removed action on the ground of inconvenient forum. 28 U.S.C. § 1441(e)(6). However, with the relative ease of transfers accomplished under section 1404(a), the harsh step of dismissal of an action under *forum non conveniens* has become unnecessary in most circumstances. *Accord Sinochem*, 549 U.S.

at 430 ("[the doctrine] has continuing application [in federal courts] only in cases where the alternative forum is abroad . . . and perhaps in rare instances where a state or territorial court serves litigational convenience best") (citation and internal quotation marks omitted).

Here, while the plaintiff points out that Mr. Walker did not state, in his opening brief, to which court he would prefer this court *transfer* the case (Doc. No. 10, at 10–11), Mr. Walker does argue, in support of his motion for *dismissal* for *forum non conveniens*, that the "appropriate forum is Illinois." (Doc. No. 7-1, at 13.) However, when "another federal district is an alternative forum, dismissal on grounds of *forum non conveniens* is inapplicable and § 1404(a) applies." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 n.1 (6th Cir. 2010) (citing *Sinochem Int'l Co.*, 549 U.S. at 430). The defendant argued first that this court should transfer the case to "Illinois federal court" (Doc. No. 7, at 1; Doc. No. 7-1, at 14) and later specified the "federal court at Northern District Court of Illinois, since all the acts, witnesses, and the parties reside in Cook County, Illinois." (Doc. No. 12, at 5.) Because the defendant argues that another federal court would provide a viable alternative forum, the defendant's motion to dismiss the action on *forum non conveniens* grounds will be denied. *Cf. Nollner v. S. Baptist Convention, Inc.*, No. 3:14-cv-1065, 2014 WL 3749522, at *6 (M.D. Tenn. July 30, 2014) (denying a motion to dismiss under *forum non conveniens* where the defendant argued, in the alternative, for transfer to another federal court).

E. Motion to Transfer under 28 U.S.C. §§ 1406(a), 1631, 1404(a)

The defendant also moves to transfer venue under 28 U.S.C. §§ 1406 (a), 1631, and 1404(a). (Doc. No. 7, at 1; Doc. No. 7-1, at 1.)

    1. *Motion to Transfer under 28 U.S.C. § 1406(a)*

Section 1406(a) does not apply to properly removed cases. *Accord Wright v. Commissioner of Soc. Sec.*, 2008 WL 2246043, *2 (E.D. Mich. 2008) ("a transfer under § 1406 must be from improper district to proper district"). Properly removed cases are necessarily properly venued. Therefore, "[a] federal court cannot transfer a removed case under 28 U.S.C. § 1406." *Nationwide Mut. Ins. Co. v. Tamariz-Wallace*, No. C2-08-1148, 2009 WL 1850612, at *2 (S.D. Ohio June 19, 2009) (collecting cases and declining to entertain a § 1406 motion to transfer). Moreover, venue is proper in this court, whether or not it was proper in Davidson County Chancery Court. *Accord Floyd v. Swift Transp. Corp.*, No. 3:06-CV-69, 2006 WL 2548337, at *2 (E.D. Tenn. Aug. 31, 2006).

Some courts in this circuit have transferred *improperly* removed cases under § 1406. *See, e.g.*, *Sirleaf v. Priority Express*, No. 21-11127, 2021 WL 2311950, at *1 (E.D. Mich. June 7, 2021) (collecting cases). But a "defendant who removes an action from state to federal court cannot then turn around and request a venue transfer pursuant to § 1406(a) . . . because . . . [the defendant] implicitly sanctioned venue in the federal district where he sought to move the state lawsuit." *Gouge v. Microbac Lab'ys, Inc.*, No. 3:11-cv-143, 2011 WL 3876919, at *4 (E.D. Tenn. Sept. 1, 2011) (quoting *Jeffrey Min. Prods. v. Left Fork Mining Co.*, 992 F. Supp. 937 (N.D. Ohio 1997)). Because the defendant removed the case to this court, the court will deny the motion to transfer under 18 U.S.C. § 1406(a).

        2.     *Motion to Transfer under 28 U.S.C. § 1631*

28 U.S.C. § 1631 provides that, if a court in a civil action finds "that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other court in which the action could have been brought at the time it was filed[.]" But Section 1631 applies only where the court lacks jurisdiction. *Accord Roman v. Ashcroft*, 340 F.3d 314, 328 (6th

Cir. 2003) ("In light of § 1631 and its purpose, . . . the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction.").

This court has found that it has personal jurisdiction over the defendant in this action. And the court has subject matter jurisdiction under 28 U.S.C. § 1332. Therefore, the court will deny the motion to transfer under 28 U.S.C. § 1631.

### 3. Motion to Transfer under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The defendant includes the text, "28 U.S.C. § 1404(a)" in his Motion to Dismiss (Doc. No. 7, at 1) and Memorandum (Doc. No. 7-1, at 1). But while the defendant argues why this court should transfer this action under 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631 (Doc. No. 7-1, at 14–15), he does not make an argument for transfer under 28 § 1404(a) in any filing. Because the defendant makes no argument, he has not met his "substantial burden of proving that transfer [under Section 1404(a)] is warranted." *Lalewicz v. WarnerMedia Direct, LLC*, No. 4:24-CV-44, 2024 WL 3640409, at *2 (E.D. Tenn. July 24, 2024) (internal quotation marks and citations omitted) (collecting cases). Therefore, the court will deny the defendant's motion to transfer under 28 U.S.C. § 1404(a).

## V. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss will be denied.

_____
ALETA A. TRAUGER
United States District Judge